UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE


<u>Ralph Holder</u>

     v.                               Civil No. 14-cv-7-JD
                                             Opinion No. 2014 DNH 114
<u>John Kerry, et al.</u>


<u>O R D E R</u>

Ralph Holder, proceeding pro se, brought suit against the Secretary of State, John Kerry, and several employees of the United States Department of State ("State Department"), alleging claims arising out of his interactions with State Department personnel during his employment with the National Passport Center in Portsmouth, New Hampshire ("Passport Center"). Holder has filed several motions, including a motion for my recusal and a motion to disqualify the United States Attorney's Office for the District of New Hampshire ("USAO"). The defendants object to the motions and move to dismiss all of Holder's claims. Holder objects to the defendants' motion.


<u>Background</u>

Holder was hired by the State Department to work at the Passport Center in February of 2001. He is "a Type II Insulin Dependent Diabetic[] and Hypertensive," and has suffered "two retinal hemorrhages to his left eye and Macular Edema to his right eye."

In 2007, after suffering his first retinal hemorrhage, he was granted approval by his superiors to work a modified schedule

from November of 2007 through March of 2008.  The modified schedule allowed Holder to skip his mandatory half hour unpaid lunch break and work an eight hour day, rather than the standard eight-and-a-half hour day.  This allowed him to leave work earlier to avoid driving home while it was dark.  Holder was subsequently allowed to work a modified schedule from November through March of 2008-2009, 2009-2010, and 2010-2011.  Holder also alleges that "[a]gency officials even formally provided [him] with a reasonable accommodation in the form of a lighted magnifier to assist him in performing the essential functions of his position."

Holder alleges that he requested to remain on a modified schedule for all of 2011, but that he was directed by his superiors to return to the normal eight-and-a-half hour workday, which included the mandatory half hour lunch, after March of 2011.  Holder made efforts to change the mandatory lunch policy, such as protesting and attempting to gather support from other employees.  He also filed an equal employment opportunity complaint for the denial of a reasonable accommodation.

Holder alleges that in response to his efforts to change the lunch policy and his filing of the complaint, and because of racial and disability discrimination, one or more of the defendants retaliated against him.  The alleged retaliation included an investigation of charges against him of workplace violence, a "letter of reprimand," a fourteen-day suspension from work, a poor performance evaluation, and the loss of a within-

grade pay increase.  Holder also alleges that during the
workplace violence investigation, certain defendants improperly
disclosed to his supervisors the fact that he had been arrested
on a state criminal threatening charge, even though the charge
had been dismissed and the arrest record was annulled.

Holder filed a complaint against the defendants on June 13,
2013 ("Holder I").  See Holder v. Kerry et al., 13-cv-267-SM
(McAuliffe, J.).  In that case, the court dismissed Holder's
complaint without prejudice because he failed, after several
extensions, to file proof that he properly served the defendants.
Judgment was entered against Holder in Holder I on December 17,
2013, and Holder's motion for reconsideration of the court's
order dismissing the complaint was denied on December 20, 2013.

Holder subsequently filed his complaint in this action
against the same defendants on January 6, 2014.  Holder's
complaint is nearly identical to his complaint in Holder I, and
alleges thirty-six separate counts, though many of the counts
have the same or similar titles and contain duplicative
allegations.  His claims are based on alleged constitutional
violations, federal statutes, and New Hampshire state law.


                            Discussion

Holder has filed several motions, including a motion for
recusal and a "motion to disqualify New Hampshire U.S. Attorney's
Office."  The defendants have moved to dismiss all of Holder's
claims.

I.    Motion for My Recusal/Disqualification

Holder moves for my "disqualification . . . from presiding over this matter."  In support, Holder states that he seeks my disqualification because I have issued rulings that were not in his favor in a prior action.  Holder refers specifically to a summary judgment order he claims that I issued in Holder v. Bahan, et al..[1]  Holder asserts that in that order, I purposefully manipulated the facts because I was biased against him and, therefore, "clearly cannot be trusted to render a fair, just and proper decision if allowed to preside over this matter."

A federal judge is required to recuse himself from a case "'in which his impartiality might reasonably be questioned.'" United States v. Pulido, 566 F.3d 52, 62 (1st Cir. 2009) (quoting 28 U.S.C. § 455(a)).  The court's consideration of a recusal issue includes a determination of whether the circumstances in the particular case would support an objective appearance of partiality as well as actual bias.  Id.  "[J]udges should not recuse themselves lightly," and in the absence of a reasonable question of bias, judges have a duty to sit.  United States v. Cruzado-Laureano, 527 F.3d 231, 239 (1st Cir. 2008) (internal quotation marks and citation omitted).

---

[1]Although I previously presided over Holder v. Bahan et al., 10-cv-448, I did not issue a summary judgment order in that case. Rather, I issued, among others, an order granting the defendants' motion to dismiss.  See Holder v. Bahan et al., 2011 WL 940211 (D.N.H. Mar. 16, 2011).  Holder may have intended to refer to my summary judgment order in Holder v. Town of Newton et al., 09-cv-341.  See 2010 WL 5185137 (D.N.H. Dec. 15, 2010).

Holder's complaints do not meet the standard for recusal.
Although Holder spends the bulk of his motion arguing that my
previous order was decided incorrectly, and asserts that the
reason for my decision must be that I am biased against him, he
does not raise a legitimate ground for my recusal.[2]  See, e.g.,
Liteky v. United States, 510 U.S. 540, 555 (1994) ("[J]udicial
rulings alone almost never constitute a valid basis for a bias or
partiality motion.").  I find that a reasonable person, fully
informed of all of the relevant circumstances, would not question
my ability to be impartial.  No other grounds exist under 28
U.S.C. § 455 for my recusal.  See, e.g., Pulido, 566 F.3d at 62-
63.  Therefore, Holder's motion for recusal is denied.

II.  Motion to Disqualify U.S. Attorney's Office for the District
     of New Hampshire

Holder moves to disqualify the USAO from representing the
defendants in this matter.[3]  Holder argues that the USAO has a
conflict of interest arising from its "dual role and non-
responsiveness of the plaintiff's repeated formal criminal

---

[2]Holder also asserts that other judges sitting in this
district are equally biased against him.

[3]Holder appears to have combined his motion for
disqualification with his objection to the defendants' motion to
dismiss.  He also appears to have combined his
"memorandum/affidavit" in support of his motion and his
objection.  Ordinarily, "[o]bjections to pending motions and
affirmative motions for relief shall not be combined in one
filing."  LR 7.1(a)(1).  Given Holder's pro se status, however,
the court will consider the motion and the objection.

complaint against" certain defendants.  He also asserts that the USAO's failure to investigate and take action on his complaints "has been motivated by retaliation for [his] acquittal of the 2007 State criminal charges that were filed by [the] predecessor" to the current United States Attorney, John Kacavas.

As a general matter, "courts disfavor motions to disqualify." Eaves v. City of Worcester, 2012 WL 6196012, at *2 (D. Mass. Dec. 11, 2012).  "Unless the underlying judicial process will be tainted by an attorney's conduct, courts should be reluctant to grant disqualification motions." Gray v. R.I. Dep't of Children, Youth and Families, 937 F. Supp. 153, 156 (D.R.I. 1996).  In particular, "[t]he disqualification of Government counsel is a drastic measure and a court should hesitate to impose it except when necessary." Aldrich v. Young, 2013 WL 3802436, at *5 (D. Mass. July 18, 2013) (quoting Gray, 937 F. Supp. at 161).

Holder has not set forth an adequate basis to disqualify the USAO as counsel for the defendants.  Holder has not named any member of the USAO as a defendant in this action and has not explained how the USAO's apparent decision not to investigate Holder's complaints has any bearing on its ability to represent the defendants in this case.  Accordingly, Holder's motion to disqualify the USAO is denied.

III. <u>Motion to Dismiss</u>

Holder's complaint asserts the following claims: "Count One: Title VII of the Civil Rights Act of 1964"; "Count Two: 42 U.S.C. § 1983: Deprivation of Rights Under Color of Law"; "Count Three: Violation of 42 U.S.C. § 1985: Conspiracy to Interfere with Civil Rights"; "Count Four: 5 U.S.C. § 552-a, Privacy Act"; "Count Five: Negligent Hiring, Improper Training and Negligent Supervision"; "Count Six[:] Negligent Hiring, Improper Supervision, Training and Negligent Retention"; "Count Seven: First Amendment & 5 U.S.C. § 552(a)(e)(7)"; "[Count Eight:] Deprivation of Rights Under Color of Law: 42 U.S.C. 1983"; "Count Nine: Negligent Hiring, Improper Supervision, Training and Negligent Retention"; "Count Ten: Intentional Tort/Interference with Doctor-Patient Relationship"; "Count Eleven: Negligent Hiring, Failure to Properly Train and Negligent Supervision"; "Count Twelve: Unfair Labor Practice"; "Count Thirteen: Negligent Hiring, Failure to Properly Train and Negligent Supervision"; "Count Fourteen: Violation of Due Process Rights"; "Count Fifteen: Violation of the Privacy Act"; "Count Sixteen: Libel, Defamation and Slander"; "Count Seventeen: 5 U.S.C. 552-a(e)(7), Privacy Act and First Amendment"; "Count Eighteen: Libel, Defamation and Slander <u>Per Se</u>"; "Count Nineteen: 42 U.S.C. § 1981a(a)(1) Civil Rights - Damages in Cases of Intentional Discrimination in Employment"; "Count Twenty: 42 USC § 1986 - Action for Neglect to Prevent"; "Count Twenty One: Title 5 U.S.C. § 552-a"; "Count Twenty-Two: Fraudulent Concealment"; "Count

7

Twenty-Three: Negligent Hiring, Improper Training and Negligent Supervision and Retention"; "Count Twenty-Four[:] First Amendment: Unlawful Infringement"; "Count Twenty-Five: Failure to Act or Neglect to Prevent: 42 U.S.C. § 1986"; "Count Twenty-Six: Failure to Accommodate 42 U.S.C. 1981a(a)(3)"; "Count Twenty-Seven: Improper Training, Negligent Supervision and Retention"; "Count Twenty-Eight: Architectural Barriers Act of 1968"; "Count Twenty-Nine: Tort of Intentional Infliction of Emotional Distress, Pain and Suffering"; "Count Thirty: The Rehabilitation Act of 1973"; "Count Thirty-One: 29 U.S.C. § 158(8)(1) and § 157: Unfair Labor Practice"; "Count Thirty-Two: 5 U.S.C. § 9101(f)"; "Count Thirty-Three: Whistleblower Protect Act Reprisal"; "Count Thirty Four: Defamation, Slander and Tort of Interference with Advantageous Employment Relations"; "Count Thirty Five[:] Violation Title 5 C.F.R. 5312.408: Within Grade Increase"; and "Count Thirty Six: First Amendment Rights Violation."

The defendants move to dismiss all of Holder's claims.  They argue that Holder's claims alleging racial and disability discrimination are governed by Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act ("Title VII"), 42 U.S.C. § 2000e-16, and the Civil Service Reform Act ("CSRA").  They also argue that Holder's claims for racial and disability discrimination are untimely and barred by the limitations periods applicable to those statutes.

The defendants further argue that Holder's claims based on alleged constitutional or statutory violations, as well as his common law tort claims, are not actionable because the remedies

prescribed under Title VII and the CSRA are exclusive.  The
defendants also contend that Holder cannot maintain any claim
against them in their individual capacities because he failed to
effect personal service on them, and that a plaintiff cannot
bring constitutional tort claims against federal employees in
their official capacities.  In addition, the defendants contend
that Holder's common law tort claims are barred under the Federal
Tort Claims Act, 28 U.S.C. §§ 1346(b)(1) & 2671, et seq.
("FTCA").

A.   Employment Discrimination Claims

     The defendants argue that "to the extent Mr. Holder attempts
to assert claims that he was discriminated against in his
employment with the [State Department] on any grounds prohibited
under Title VII . . ., the Rehabilitation Act [of 1973, 29 U.S.C.
§ 701, et seq.], and the CSRA, the claims should be dismissed."
The defendants contend that Holder's employment discrimination
claims are governed by the ninety day limitations period imposed
by Title VII, and that this action was commenced after the
limitations period expired.[4]

---

[4]The defendants do not identify the specific counts they
contend assert employment discrimination claims governed by Title
VII's limitations period.  As the defendants note, many of the
counts in the complaint include allegations of fact and of law
that go beyond the identified subject headings.  Only two counts,
Count I and Count XXX, have subject headings that appear to
assert violations of Title VII, the Rehabilitation Act, or the
CSRA.  Therefore, given Holder's pro se status, the court will
assume that those two counts are the only ones directly asserting
employment discrimination claims.

Title VII provides a remedy for adverse employment actions
that are discriminatory based on race, color, religion, sex, or
national origin.  See § 2000e-16(a); see also Morales-Vallellanes
v. Potter, 605 F.3d 27, 35 (1st Cir. 2010); Rosario v. Dep't of
Army, 607 F.3d 241, 246 (1st Cir. 2010).  Title VII also
prohibits employers from "discriminat[ing] against any of [its]
employees . . . because he has opposed any practice made an
unlawful employment practice" by the statute.  § 2000e-3(a).
Pursuant to the Rehabilitation Act, claims of discrimination
based on disability are also governed by the procedures set forth
in Title VII.  See 29 U.S.C. § 794a(a)(1); see also Nunnally v.
MacCausland, 996 F.2d 1, 2 (1st Cir. 1993).

In addition, claims of employment discrimination brought by
federal employees "are controlled by the procedures established
for federal employees under the CSRA."  Nunnally, 996 F.2d at 2.
"Together, [Title VII and the CSRA] provide a series of
interdependent supplementary and parallel channels for federal
employees seeking administrative review of claims alleging
prohibited discrimination."  Id. at 3.  "The statutes expressly
cross-reference one another, conditioning the number and sequence
of open avenues of administrative and court review on the
employee's status and the nature of the claim."  Id.

Under the CSRA, Holder's employment discriminations claims
are subject to the review process set forth in Title VII.  See §
7703(b)(2); see also Broadway v. Block, 694 F.2d 979, 983 (5th
Cir. 1982); Beatty v. Thomas, 2005 WL 1667745, at *5 (E.D Va.
June 13, 2005).  Title VII requires that an aggrieved employee

10

file an administrative charge as a prerequisite to commencing a
civil action for employment discrimination.  <u>Fantini v. Salem
State Coll.</u>, 557 F.3d 22, 26 (1st Cir. 2009).  The administrative
process begins with the filing of an administrative charge before
the Equal Employment Opportunity Commission ("EEOC") or its state
analogue.  <u>See</u> <u>Franceschi v. U.S. Dep't of Veterans Affairs</u>, 514
F.3d 81, 85 (1st Cir. 2008).  The employee may sue in federal
court only if he exhausts his administrative remedies under the
statute.  42 U.S.C. § 2000e-5(f)(1); <u>see also</u> <u>Franceschi</u>, 514
F.3d at 85.  Upon exhaustion of an employee's administrative
remedies,"the EEOC must send the employee notice, in the form of
what is known as a right-to-sue letter."  <u>Franceschi</u>, 514 F.3d at
85.  After receiving that notice, the employee has ninety days to
bring suit in federal court.  § 2000e-5(f)(1); <u>see also</u> <u>Loubriel
v. Fondo del Seguro del Estado</u>, 694 F.3d 139, 142 (1st Cir. 2011)
("[U]pon a claimant's exhaustion of administrative remedies, the
EEOC will inform the claimant that she has 90 days within which
to bring a civil action.").

The defendants argue that Holder failed to file suit within
Title VII's ninety day limitations period.[5]  They contend that

---

[5]The defendants suggest that Holder's discrimination claims
may have been subject to the CSRA's thirty day limitations
period, rather than Title VII's ninety day limitations period.
They note, however, that because they informed Holder that he had
ninety days to file a civil action, their argument focuses only
on whether Holder complied with Title VII's limitations period.
Therefore, for purposes of the defendants' motion to dismiss, the
court will assume without deciding that Title VII's ninety day
limitations period applies to Holder's employment discrimination
claims.

Holder filed a formal complaint of discrimination, and the State
Department issued its decision denying Holder's employment
discrimination claims on March 14, 2013.  They further argue that
the decision, which included the notice of Holder's right to sue,
was emailed to Holder on that same day, and that they received a
reply notice indicating that Holder opened the email later that
day.  They also contend that a hard copy of the final decision
was delivered to Holder's home by UPS on March 29, 2013.

Although the defendants argue that the operative date for
beginning the limitations period is March 14, 2013, the date
Holder received the right-to-sue letter via email, they contend
that Holder's suit is time-barred regardless of the operative
date.  They argue that if the ninety day limitations period began
to run on March 14, 2013, then Holder was required to file his
suit by June 12, 2013.  Alternatively, they argue that if the
limitations period began to run on March 29, 2013, Holder was
required to file suit by June 27, 2013.  Because Holder did not
file the instant action until January 6, 2014, the defendants
contend that Holder's suit is time-barred.

In addition, the defendants address the effect of the
complaint in Holder I.  They argue that because Holder I was
dismissed due to Holder's own neglect in failing to properly
serve the defendants, that action has no bearing on the ninety
day limitations period for purposes of the limitations period
here.  They further argue that even if the filing of the
complaint in Holder I would have tolled the limitations period,

this action is still time-barred because it was filed after the tolled limitations period expired.

Holder does not dispute that his complaint in this action was filed more than ninety days after he received the right-to-sue letter.  Therefore, the only question is whether Title VII's limitations period should be equitably tolled, either because of the filing of Holder I or for some other reason.


1.   Email Notification

"In order to be timely, a federal suit under Title VII must be filed within 90 days after the EEOC provides the claimant with a right-to-sue letter."  Hill v. Textron Automotive Interiors, Inc., 160 F. Supp. 2d 179, 183 (D.N.H. 2001).  The ninety day limitations "period does not begin to run until the claimant has received the right-to-sue notice."  Ciprian v. City of Providence, 2013 WL 1339264, at *4 (D.R.I. Apr. 1, 2013) (noting that "[a]lthough [§ 2000e-5(f)(1)] refers to the 'giving' of such notice," the limitations period begins to run on the date the claimant receives notice); see also Loubriel, 694 F.3d at 143; Hill, 160 F. Supp. 2d at 183 ("[T]he 90-day period does not begin to run until the aggrieved person actually receives notice in the form of a right-to-sue letter.").

Here, the defendants included as exhibits to their motion the March 14, 2013, email to Holder attaching the right-to-sue letter, and the March 14, 2013, reply notice indicating that Holder had accessed the email on that date.  Holder does not dispute the authenticity of those documents or that he received

the right-to-sue letter on March 14, 2013.[6]  Therefore, the ninety day limitations period began to run on that date.  See, e.g. Zilinskas v. UPMC, 2013 WL 2237726, at *4 (W.D. Pa. May 21, 2013) ("Attorney Sheerer had notice of the right to sue letter via email from the EEOC on January 3, 2013 . . . . [Thus,] Plaintiff . . . had adequate notice of the right to sue letter on January 3, 2013 and therefore had ninety days from that date to commence action in this court.").

Under the counting rules established in Federal Rule of Civil Procedure 6(a), to have been timely filed within the ninety day limitations period, Holder was required to file a lawsuit no later than June 12, 2013.  Holder's complaint in Holder I is dated June 13, 2013, and it was docketed in the court on the same day.  Holder acknowledges in his objection to the defendants' motion to dismiss that he filed his original complaint on June 13, 2013.[7]  Therefore, Holder's complaint in Holder I was filed

---

[6]When the moving party presents matters outside the pleadings to support a motion to dismiss, the court must either exclude those matters or convert the motion to one for summary judgment.  Fed. R. Civ. P. 12(d).  An exception to Rule 12(d) exists "for documents the authenticity of which [is] not disputed by the parties; for official public records; for documents central to the plaintiffs' claims; or for documents sufficiently referred to in the complaint."  Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (internal quotation marks omitted).  Because Holder does not dispute the authenticity of the documents and does not contest the dates set forth in the defendants' motion, the additional documents submitted by the defendants may be considered without converting the motion to one for summary judgment.

[7]Holder argues, without elaboration, that his June 13, 2013, complaint in Holder I "was timely filed within 90 days of receipt of the Final Agency Decision."

after the ninety day limitations period expired.  Accordingly,
even if Holder's filing of the complaint in <u>Holder I</u> would have
tolled Title VII's ninety day limitations period had it been
timely filed, because the complaint in that action was filed
after the limitations period expired, Holder's employment
discrimination claims are time-barred.[8]

### 2.   <u>Hard Copy Delivery</u>

The defendants argue that even if the operative date for
beginning the ninety day limitations period were March 29, 2013,
the date on which a hard copy of the right-to-sue letter was
delivered to Holder's home, Holder's employment discrimination
claims would still be time-barred.  They contend that even if
<u>Holder I</u> were timely filed, that action did not equitably toll
the limitations period because it was dismissed due to Holder's
own neglect in failing to properly serve the defendants.  They
also argue that even if <u>Holder I</u> did equitably toll the
limitations period, Holder's complaint in this action is still
untimely.

Title VII time limits are not jurisdictional and may be
subject to equitable tolling.  <u>See</u> <u>Irwin v. Dep't of Veterans
Affairs</u>, 498 U.S. 89, 93-96 (1990).  The First Circuit, however,

---

[8]Although Holder filed his complaint in <u>Holder I</u> only one
day after the limitations period expired, "[a]bsent a basis for
equitable tolling, even a one day delay beyond the statutory
ninety days is fatal to [a Title VII] claim, even in the case of
a <u>pro se</u> plaintiff."  <u>Hines v. Serv. Corp. Intern.</u>, 2008 WL
2692033, at *2 (N.D. Ill. July 1, 2008).

"hew[s] to a narrow view of equitable exceptions to Title VII
limitations periods." Rys v. U.S. Postal Serv., 886 F.2d 443,
446 (1st Cir. 1989) (internal quotation marks and citations
omitted); see also Chico-Velez v. Roche Prods., Inc., 139 F.3d
56, 59 (1st Cir. 1998).  Thus, equitable tolling in a Title VII
action is available in only limited circumstances, such as "when
a plaintiff shows that circumstances beyond his or her control
precluded a timely filing." Farris v. Shinseki, 660 F.3d 557,
563 (1st Cir. 2011) (internal quotation marks and citation
omitted).  "It is axiomatic that equitable tolling does not
extend to what is at best a garden variety claim of excusable
neglect." Id. at 565 (internal quotation marks and citation
omitted)

Assuming that March 29, 2013, is the date Holder received
the right-to-sue letter, using Rule 6(a)'s counting rules, Holder
would have been required to file suit no later than June 27,
2013.  Therefore, under those circumstances, Holder's complaint
in Holder I, which was filed on June 13, 2013, would have been
timely filed.  In Holder I, however, the court dismissed the
action without prejudice because Holder failed to effect service
on the defendants.  The court in Holder I directed Holder several
times to properly serve the defendants pursuant to Fed. R. Civ.
P. 4(i)(1) and (3).  Holder had almost six months from the time
he filed the complaint until the time the court dismissed the
action to properly effect service, but he failed to do so.  The
dismissal of Holder I was a result of Holder's own failure to
follow the Federal Rules of Civil Procedure.  Therefore, because

16

Holder I was dismissed due to Holder's own neglect in failing to
properly serve the defendants, the filing of Holder I, even if
timely, would not equitably toll Title VII's limitation period.[9]
Farris, 660 F.3d at 563 ("However, a plaintiff generally cannot
avail [himself] of the doctrine [of equitable tolling] if [he] is
responsible for the procedural flaw that prompted dismissal of
[his] claim; in other words, equitable tolling will not 'rescue a
plaintiff from his or her own lack of diligence.'") (quoting
Abraham v. Woods Hole Oceanographic Instit., 553 F.3d 114, 119
(1st Cir. 2009)); see also Irwin, 498 U.S. at 96 (equitable
tolling is inappropriate "where the claimant failed to exercise
due diligence in preserving his legal rights").[10]

### 3.   Other Grounds for Equitable Tolling

Holder appears to argue in his objection that the
limitations period should be equitably tolled because he "is
legally medically disabled to include a diagnosis of Severe Bi-
Lateral Carpal Tunnel Syndrome which limited his ability to type,

----

[9]The defendants suggest that in certain circumstances, a
plaintiff's filing of a complaint within Title VII's limitation
period may toll the period.  Therefore, the court assumes without
deciding that the complaint in Holder I, had it been timely
filed, could have equitably tolled Title VII's limitation period
if it had not been dismissed due to Holder's own neglect.  But
see Chico-Velez, 139 F.3d at 59 ("[A] prescriptive period is not
tolled by filing a complaint that is subsequently dismissed
without prejudice.").

[10]Because Holder I would not equitably toll Title VII's
limitations period, the court does not address the defendants'
additional arguments concerning the untimeliness of Holder's
complaint in this action.

Cardiomyopathy, Retinopathy, Degenerative Disc Disease and also, the [4th] and [5th][11] Jan 2014 were days of weekend thus delayed his refiling by one day." That argument is unavailing. Holder does not explain how his disability prevented him from timely filing his complaint, particularly in light of his complaint in Holder I and his several filings in this case. Consequently, Holder "has failed to satisfy [his] burden of showing 'exceptional circumstances' that would warrant tolling." Farris, 660 F.3d at 565.

Accordingly, Holder's claims of employment discrimination are dismissed as untimely.

B.   Other Claims Arising Out of Alleged Employment Conduct

The remaining counts in Holder's complaint appear to assert claims under 42 U.S.C. §§ 1981, 1981a, 1983, & 1986; constitutional tort claims for violations of his First Amendment and Due Process rights; violations of various federal statutes, including the Privacy Act; and common law tort claims.

The defendants contend that all of these claims arise out of alleged employment discrimination, or out of their alleged retaliation against Holder for exercising his First Amendment rights in opposing the employment discrimination. They contend

---

[11]Holder's objection refers to the "11th and 12th Jan 2014." It appears that Holder intended to reference January 4 and January 5, 2014, the weekend days in between when the defendants claim that the limitations period would have expired had it been equitably tolled and the date on which Holder filed his complaint.

that this alleged conduct is prohibited by and subject to Title VII and the CSRA and that, therefore, these claims are preempted by the exclusive remedies available to federal employees under Title VII and the CSRA.

Title VII and the CSRA "provide[] the exclusive judicial remedy for claims of discrimination in federal employment." Brown v. Gen. Servs. Admin., 425 U.S. 820, 835 (1976); see also Nunnally, 996 F.2d at 3 n.3.  Similarly, where a federal employee's "First Amendment retaliation claim arises from the context of his federal employment, the CSRA is his sole remedy." Ruddy v. U.S. Postal Serv., 455 Fed. Appx. 279, 285 (3rd Cir. 2011); see also Sarullo v. U.S. Postal Serv., 352 F.3d 789, 795-97 (3d Cir. 2003).  To hold otherwise would mean that Title VII and the CSRA, "with [their] rigorous and administrative exhaustion requirements and time limitations, would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible." Brown, 425 U.S. at 833.  "The crucial administrative role that each agency . . . was given by Congress in the eradication of employment discrimination would be eliminated 'by the simple expedient of putting a different label on (the) pleadings.'" Id. (quoting Preiser v. Rodriguez, 411 U.S. 475, 489-90 (1973)).  Thus, Title VII and "the CSRA provide[] the exclusive avenue[s] to review even . . . where Plaintiffs' claims are constitutional claims for equitable relief." Rivera-Aviles v. U.S. Dep't of Justice, 2013 WL 4806513, at *2 (D.P.R. Sept. 5, 2013) (citing Elgin v. Dep't of Treasury, 132 S. Ct. 2126, 2132 (2012)); see also Rivera-Rosario

<u>v. U.S. Dep't of Agric.</u>, 151 F.3d 34, 38 (1st Cir. 1998)
(dismissing claim under the Back Pay Act because "where the
gravamen of the claim is Title VII discrimination, the only
remedy available is under Title VII").

Here, the remaining counts in Holder's complaint assert
constitutional and common law violations, as well as violations
of federal law.  These claims are all based on allegations of
employment discrimination on account on Holder's race or
disability, or on allegations of the defendants' retaliation for
Holder's opposition to those practices.  Therefore, those claims
are preempted by the exclusive remedies in Title VII and the
CSRA, and are not actionable.

C.   <u>Claims Against Defendants in Their Personal Capacity</u>

The defendants argue that, even if Holder's claims asserting
constitutional, federal law, and common law violations were not
preempted by Title VII and the CSRA, they should still be
dismissed to the extent they are alleged against them in their
personal capacities.[12]  They contend that Holder failed to effect
personal service on them.

Federal Rule of Civil Procedure 4(i)(3) provides:

To serve a United States officer or employee sued in an
individual capacity for an act or omission occurring in
connection with duties performed on the United States'
behalf (whether or not the officer or employee is also sued
in an official capacity), a party must serve the United

---

[12]There is no cause of action under Title VII against an
employee in his personal capacity.  <u>See</u> <u>Fantini</u>, 557 F.3d at 29-
30.

States and also serve the officer or employee under Rule 4(e), (f), or (g).

Rule 4(e) requires service on an individual within a judicial district of the United States to be served as allowed under state law, or by delivering service in-hand, at the person's abode, or on an agent authorized to receive service.  New Hampshire Rev. Stat. Ann. 510:2 states that "[a]ll writs and other processes shall be served by giving to the defendant or leaving at his abode an attested copy thereof . . . ."

Holder's return of service shows that service on the individual defendants was effected by bulk delivery of all summonses and complaints to the Executive Director of the Office of the Legal Adviser, who signed for acceptance of service.  The Executive Director, however, is "authorized to receive . . . service against the individual Defendants <u>only</u> in their <u>official capacities</u>."  <u>Keller v. Embassy of United States</u>, 522 F. Supp. 2d 213, 219 (D.D.C. 2007) (dismissing claims against Department of State employees in their individual capacities because the plaintiff served only the Executive Director in the Executive Office of the Office of the Legal Advisor at the Department of State).  Holder did not address the defendants' arguments concerning his failure to serve them in their individual capacities.

Holder's "pro se status does not relieve him of his 'obligation to meet the procedural requirements' of" Rule 4(i).  <u>Watkins v. United States</u>, 2011 WL 1624997, at *2 (D. Mass. Apr. 28, 2011) (quoting <u>Lattimore v. Polaroid Corp.</u>, 99 F.3d 456, 464

(1st Cir. 1996)).  Therefore, to the extent Holder's claims
against the defendants in their individual capacities were not
otherwise preempted by Title VII and the CSRA, they are not
actionable.


D.   Constitutional Torts

     The defendants also argue that even if Holder's
constitutional tort claims were not preempted by Title VII and
the CSRA, the government has not waived its sovereign immunity
for such claims.  The defendants contend that, therefore, they
cannot be sued in their official capacity for those claims.

     Absent a waiver, sovereign immunity shields the Federal
Government, [its employees,] and its agencies from suit."
F.D.I.C. v. Meyer, 510 U.S. 471, 475 (1994).  "Indeed, . . . the
only way in which a suit for damages arising out of
constitutional violations attributable to federal action may be
brought is under the doctrine of Bivens v. Six Unknown Agents of
the FBN, 403 U.S. 388 (1971)."  Tapia-Tapia v. Potter, 322 F.3d
742, 746 (1st Cir. 2003).

     "In Bivens, the Supreme Court allowed a suit for damages
against federal officers in their individual capacities for
alleged violations of the plaintiff's constitutional rights."
Tapia-Tapia, 322 F.3d at 746.  However, "Bivens suits only can be
brought against federal officers in their individual capacities."
Id. (citing Rivera v. Riley, 209 F.3d 24, 28 (1st Cir. 2000)).

     Therefore, to the extent Holder alleges constitutional
claims that go beyond employment discrimination and retaliation

22

subject to Title VII and the CSEA, which he does not, those claims would not be cognizable against the defendants in their official capacity.[13]

E.    Common Law Tort Claims

The defendants also argue that even if Holder's common law tort claims were not preempted, the court lacks subject matter jurisdiction to entertain those claims.  They contend that the court's jurisdiction is limited by the FTCA.

"The FTCA is a limited waiver of sovereign immunity by the United States whereby a claimant can sue for the 'negligent or wrongful act or omission' of certain government employees." Ramirez-Carlo v. United States, 496 F.3d 41, 46 (quoting § 1346(b)(1)).  Thus, the FTCA "provides the exclusive remedy to compensate for a federal employee's tortious acts committed within his or her scope of employment."  Roman v. Townsend, 224 F.3d 24, 27 (1st Cir. 2000).  The limited waiver of sovereign immunity only applies to those claims that are properly presented to the appropriate agency within two years of accrual.  28 U.S.C. §§ 2401(b) & 2675(a).  If the administrative claim is denied, only then may a claimant file suit in federal court.  § 2401(b). In the absence of a timely filed administrative claim, federal

---

[13]As stated above, those claims would also not be actionable against the defendants in their personal capacities because Holder failed to properly effect personal service on the defendants.

courts lack jurisdiction to consider the claim.  <u>Donahue v. United States</u>, 660 F.3d 523, 524 (1st Cir. 2011).

The defendants contend that Holder did not file an administrative claim under the FTCA.[14]  Holder does not dispute the defendants' argument or otherwise contend that he filed an administrative claim to an appropriate federal agency.[15]  As a result, even if Holder's common law tort claims were not preempted by Title VII and the CSRA, the court lacks subject matter jurisdiction over those claims against the defendants.[16]

### Conclusion

For the foregoing reasons, the plaintiff's motion for recusal (document no. 7) and motion to disqualify the U.S. Attorney's Office (document no. 9) are denied.  The defendants'

[14]The defendants attach as an exhibit to their motion the affidavit of Megan Grimball, an Attorney-Adviser with the State Department.  In her affidavit, Grimball states that the available tort claim records show that Holder did not file an administrative claim under the FTCA.

[15]Holder asserts only that he "made diligent and repeated attempts to exhaust his administrative remedies first through agency pre-complaint process involving a mutually agreed upon EEO Alternate Dispute Resolution settlement conference."

[16]To the extent Holder sought to bring his common law tort claims against the defendants in their individual capacities, the FTCA bars those claims for the same reason.  <u>See, e.g.</u>, <u>Mala v. Palmer</u>, 755 F. Supp. 2d 386, 393 n. 8 (D.P.R. 2010) ("It is now beyond dispute that the United States, and not the responsible agency or employee, is the proper party in an FTCA suit.  That is, a suit against the United States under the FTCA is the exclusive remedy for tort claims arising from the actions of government employees and courts have consistently held that an employee cannot be sued <u>eo nomine</u> under the FTCA.") (internal quotation marks and citations omitted).

motion to dismiss (document no. 6) is granted.  All other pending motions are terminated as moot.  The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

May 22, 2014

cc:  Ralph Holder, pro se
     T. David Plourde, Esq.